# CIRCUIT COURT OF BALTIMORE CITY.

Filed August 29, 1903.

WILLIAM G. CRENSHAW, JR., ET AL.
VS.
THE BALTIMORE CHROME WORKS ET AL.

*Barton, Wilmer, Ambler & Stewart* and *Bernard Carter* for plaintiffs.

*John P. Poe, Charles M. Howard, Gans & Haman, Fisher, Bruce & Fisher, Lemmon & Clotworthy* and *W. Geo. Weld* for defendants.

DOBLER, J.—

The plaintiffs in their bill and until the final argument in the case, claimed to be entitled to a lien upon the fund arising from the sale of all the stock of the Baltimore Chrome Works to the extent of $69,500 as compensation stipulated to be paid them out of the proceeds of the sale, as agreed upon with the company, and sanctioned and approved by the stockholders of said company. They assert their employment in the capacity of agents and brokers to make such sale, and that they occupied no other relations towards the company and its stockholders from March 19, 1902, when Mr. Wesley M. Oler addressed a letter to Mr. John A. Tomkins, treasurer of the Baltimore Chrome Works, containing the words, "that there may be no misunderstanding or doubt about my position, I want to say at this stage that I shall expect 5 per cent. commission in kind if the conferences should result in the consummation of a sale or consolidation," up to the day of the final consummation of the sale to George Bowers, the agreement for which was signed July 30th, 1902.

In the sale actually made, other parties represented the stockholders of the Baltimore Chrome Works.

The basic price obtained for the real and leasehold property of the Baltimore Chrome Works was $625,000. The purchaser was the same person who signed the offer to Mr. Wesley M. Oler, dated June 25th, 1902, for the same property at $600,000.

The defendants answering say, that during the negotiations between the plaintiffs and the officers of the Baltimore Chrome Works prior to the 18th day of July, 1902, the only event upon the happening of which the plaintiffs had any right to expect any commission for a sale of the property of the Chrome Works was in case the sale should have taken place prior to the 20th of June, 1902, at the price of $1,200,000. That on or about the 22nd day of June, 1902, the plaintiffs stated they were prepared to make an offer of $1,000,000 net (free of commissions), for the property of the Chrome Works,

that is $550,000 for the real and leasehold property, and cost for the merchandise and face value of its book accounts, and thereupon a "return proposition" was submitted by the directors of the company, in which it was expressly stated that the purchase price was to be free of commission. This "return proposition" was to be open until June 26, 1902. Nothing was effected by the plaintiffs under the "return proposition."

When the plaintiffs were in a position to submit the offer of $600,000 from George R. Bower, as contained in his letter dated June 25th, 1902, a copy of it was presented without signature or indication of the place whence it came, with two blank drafts of agreement attached to it. This proposition was for a sale of the *stock*, not the assets of the company, and along with it was submitted a statement by the plaintiffs that the proposed price was the highest price which would be paid for the property, and that a sale on the terms therein mentioned could not go through without the payment to the plaintiffs of the price indicated in the proposed agreement for compensation to them. After some discussion of figures the plaintiffs reduced their claim for compensation from $70,000 to $69,500.

Much testimony was taken and many able arguments presented by the counsel for both parties. In the final argument for the plaintiffs, the claim that any of the defendants ever assented to the change from 5 per cent. commission to the commission of $69,500 was not asserted, but it was contended that all the parties in interest perfectly understood that the relation of Messrs. Oler and Crenshaw to the transaction was that of agents and brokers, and that they were to be entitled, if the sale was effected through their agency, to 5 per cent. commissions on the proceeds of sale.

The withdrawal of the "specific claim of $69,500 stipulated compensation to be paid out of the proceeds of the sale as agreed upon," relieves this case from most of its difficulty. It also, in my opinion, takes the case out of the jurisdiction of an equity Court. The right of a broker to commissions gives him no lien on the fund which ordinarily does not pass through his hands.

The expression on the part of Mr. Oler in his letter of March 19th, 1902, "I shall expect a five per cent. commission in kind;" taken in connection with the fact that nothing but cash was paid in the sale of the stock of the Chrome Works, (the owners of which then knew nothing whatever of any proposition on his part to deal directly with them, or for them), cannot give them a lien on the proceeds of sale made by other agents. But the plaintiffs' case is fatally defective in another particular. If the relation of the plaintiffs to the transaction was that of agents and brokers for the defendants, (they were not of course real estate agents and brokers in the pursuit of their ordinary occupation), and if the defendants did not assent to the increase in the charge of their commissions involving the addition of about $19,500, it is certain the plaintiffs never for one moment abated their demands for the greater sum, but insisted that $69,500 must be made an essential element in the contract under which the property of the defendants was to be transferred to the purchaser, whom they declined to name.

No cause has been shown to justify the increase in the compensation of the plaintiffs if they be regarded as agents or brokers of the defendants. The law protects a broker against unfair dealing on the part of his principal. The owner of property cannot avail himself of the services of a broker and by making a sale through information derived from the agent deprive the latter of his commissions.

After negotiations begun through a broker's intervention have virtually culminated in a sale the agent cannot be discharged so as to deprive him of his commission. The law, however, requires fair dealing on the part of the broker. An agent may not obtain the confidence of his principal and the privilege of exposing property for sale, with an understanding as to the amount of commissions, and then advance his charges arbitrarily when he has discovered a purchaser willing to comply with the vendor's terms. Such an advance in charge, if not acceded to by the principal, dissolves the relation of principal and agent, and absolves the principal from all obligation for services theretofore rendered.

The plaintiffs took a position outside a broker's sphere. Having failed

to obtain the defendants' assent to their demands, they cannot maintain this suit. The bill must, therefore, be dismissed.